**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| OLIVER N. GREENE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:22-CV-04309-ELR |
| | * | |
| BOARD OF REGENTS OF THE | * | |
| UNIVERSITY SYSTEM OF | * | |
| GEORGIA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

_____

**O R D E R**

_____

Presently before the Court are Magistrate Judge Linda T. Walker's Final

Report & Recommendation ("R&R") [Doc. 60] and Plaintiff Oliver N. Greene and

Defendant Board of Regents of the University System of Georgia's objections

thereto [Docs. 65, 66]. The Court sets forth its reasoning and conclusions below.

## I.    Background

This case arises from Plaintiff Oliver N. Greene's employment as a tenured

Professor at George State University ("GSU"). See generally Compl. [Doc. 1]. As

explained in the R&R, Plaintiff began working at GSU in the School of Music in

2001 and subsequently gained tenure in 2008. R&R at 2. Plaintiff taught courses in

music history and culture and did not instruct students on singing or playing musical

instruments.  Id.  He suffers from "allergic fungal sinusitis," which causes him to periodically lose his voice when he is exposed to atmospheric mold.  Id.  While he was living in Georgia, Plaintiff "would have 'flare ups' four to six times per year that caused him to entirely lose his voice for seven to ten days."  Id.  In 2013, Plaintiff's physician recommended that he move to either the Southwest or Northeast region of the United States where there is less mold in the climate.  Id.

Plaintiff began teaching his classes remotely from California in 2017 and this arrangement continued for several years, including during the COVID-19 pandemic when GSU "was forced to shift to fully remote classes."  Id. at 2, 4.  While he was living in California, Plaintiff experienced only one flare up, which was "during an unusually rainy season."  Id. at 3.  However, in 2021 Plaintiff was told that he would need to apply for an accommodation pursuant to GSU's Americans with Disabilities Act ("ADA") policy in order to continue teaching remotely from California.  Id. at 4. GSU's Assistant Director of Benefits and Plaintiff's supervisor initially met and determined that Plaintiff's request was reasonable, but an attorney at GSU who reviewed the request "was concerned that they had not 'fully analyzed the essential

functions of the job.'" Id. (quoting Defendant's Statement of Material Facts ("Def.'s SOMF") ¶ 7 [Doc. 39-2]).[1]

GSU ultimately denied Plaintiff's request to teach remotely from California on the ground that it was not a reasonable accommodation and offered to provide him with an air purifier in his office as an alternative. Id. Plaintiff appealed the decision. Id. at 5. In his appeal, Plaintiff argued that an air purifier would not adequately accommodate him because the mold allergens that caused his reactions are atmospheric and regional and not related to the mold levels in a specific office. Id. GSU denied Plaintiff's appeal but permitted him to keep teaching remotely through the 2021–2022 school year. Id. Plaintiff's employment at GSU ended in May 2022.[2] Id. at 2.

On October 28, 2022, Plaintiff filed the instant action in this Court. See Compl. In his Complaint, Plaintiff claims that Defendant's denial of his requested

---

[1] The Court uses the Parties' proposed facts and responses as follows: where one side admits a proposed fact, the Court accepts it as undisputed for purposes of this order and cites only the proposed fact. Where one side admits a proposed fact in part, the Court cites to the proposed fact and includes the undisputed part. Where one side denies a proposed fact in whole or in part, and such fact is material, the Court reviews the record and determines whether a factual dispute exists. If the denial is without merit, either because the proposed fact has been deemed admitted or the record citation supports the proposed fact, then the Court cites only to the proposed fact and not the response. Finally, the Court excludes proposed facts that are immaterial, includes facts drawn from its review of the record, and considers all proposed facts in light of the standard for summary judgment. See LR 56.1(B)(2)(a)(2)(iii), NDGa.; see also FED. R. CIV. P. 56(c)(3).

[2] As a result of Plaintiff's accommodation being denied, Defendant asserts that Plaintiff "chose to resign rather than return to campus." [Doc. 66 at 3]; see Def.'s SOMF ¶ 64. Plaintiff disputes this assertion and claims that he never resigned. Plaintiff's Response to Defendant's Statement of Material Facts ¶ 64 [Doc. 52-1].

3

remote-teaching accommodation constitutes disability discrimination under Titles I and II of the ADA (Counts I and II) and the Rehabilitation Act (Count III). See generally id. Plaintiff also raises a breach of contract claim (Count IV) on the theory that Defendant's conduct "effects a termination of [his] employment without cause." Id. ¶ 79. Both parties subsequently moved for summary judgment. [See Docs. 39, 40]. Defendant moved for summary judgment on all Counts, whereas Plaintiff moved for summary judgment on all Counts except for the breach of contract Count. [See generally id.]

On May 20, 2024, the Magistrate Judge issued an R&R recommending that both motions be granted in part and denied in part. See R&R at 1. Though the two (2) motions involve overlapping claims, the Magistrate Judge analyzed each motion separately.

In addressing Defendant's motion, the Magistrate Judge first recommended that Plaintiff's ADA and breach of contract claims be dismissed on the ground that Defendant was entitled to sovereign immunity under the Eleventh Amendment. Id. at 7–10. Next, the Magistrate Judge addressed Defendant's three (3) separate arguments for why it should be entitled to summary judgment on Plaintiff's Rehabilitation Act claim: (1) that Plaintiff is not disabled; (2) that in-person presence is an essential function of Plaintiff's job; and (3) that Plaintiff had thwarted the interactive process. Id. at 10–25. The Magistrate Judge rejected all three (3) of these

4

arguments and recommended that Defendant's motion for summary judgment be denied on Plaintiff's Rehabilitation Act claim.   See generally id.   First, the Magistrate Judge found that Plaintiff is disabled within the meaning of the Rehabilitation Act because when Plaintiff's condition is active it causes him to lose his voice for seven (7) to ten (10) days at a time, substantially impairing his ability to speak. Id. at 12–15.  Second, the Magistrate Judge found that there was sufficient evidence that Plaintiff could perform the essential functions of his job with a remote working arrangement such that he would be entitled to a reasonable accommodation. Id. at 22–23.   Third, the Magistrate Judge rejected Defendant's argument that Plaintiff caused a breakdown in the interactive process when he rejected the proposed alternative accommodation of an air purifier in his office.  Id. at 24–25. The Magistrate Judge opined that "[v]iewing the evidence in the light most favorable to Plaintiff, Defendant caused the breakdown in the interactive process." Id. at 25.

In addressing Plaintiff's motion for partial summary Judgment, the Magistrate Judge began by noting that—as she already determined when addressing Defendant's motion—Plaintiff's ADA claims were barred by the Eleventh Amendment and therefore failed as a matter of law. Id.  She then divided her analysis of Plaintiff's motion for summary judgment on his Rehabilitation Act claim into three (3) parts: "(a) whether Plaintiff is a qualified individual with a disability, (b) whether he was denied a reasonable accommodation, and (c) whether Plaintiff is

entitled to judgment as a matter of law on Defendant's affirmative defenses." Id. at 26. In the first part, the Magistrate Judge concluded that Plaintiff was "disabled" within the meaning of the Rehabilitation Act for essentially the same reasons she had described in the context of addressing Defendant's motion. Id. at 27–29. In addition, she concluded that Plaintiff was a "qualified individual" within the meaning of the Rehabilitation Act because "even assuming physical presence is required, and that remote work is not a reasonable accommodation, Plaintiff could still perform the essential functions of his position with a reasonable accommodation." Id. at 30. In the second part, she determined that "viewing the evidence in the light most favorable to Defendant, . . . a reasonable jury could decide that his request to work remotely was not a reasonable accommodation." Id. at 31. In the last part, the Magistrate Judge considered the two (2) affirmative defenses that Defendant had raised. See id. at 35–42. The first defense, which the Magistrate Judge referred to as the Stewart defense—named after the case Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278 (11th Cir. 1997)—is based on the theory that Plaintiff caused a breakdown in the interactive process. The Magistrate Judge found that the Stewart defense fails as a matter of law for essentially the same reasons she had articulated in the context of Defendant's motion. R&R at 36–39. However, the Magistrate Judge recommended that Plaintiff's request for summary judgment be denied on Defendant's other affirmative defense—that the requested

accommodation would impose an undue hardship on Defendant—on the ground that Defendant had created a genuine dispute of material fact as to whether it could prove that defense at trial. Id. at 42.

Both Parties filed objections to the Magistrate Judge's R&R, [Docs. 65, 66], and both Parties also filed responses to each other's objections,[3] [Docs. 67, 68]. Each Party's objections are limited to Plaintiff's Rehabilitation Act claim. More specifically, Plaintiff objects to the Magistrate Judge's determination that a reasonable jury could conclude that in-person presence is an essential function of Plaintiff's job and her refusal to reject Defendant's undue hardship defense as a matter of law. [See generally Doc. 65]. By comparison, Defendant objects to the Magistrate Judge's determination that Plaintiff is disabled and argues that the Magistrate Judge should have concluded as a matter of law both that in-person presence is an essential function of Plaintiff's job and that his requested accommodation is unreasonable. [See generally Doc. 66].

Having been fully briefed, both Parties' objections are ripe for the Court's review, and the undersigned begins by setting forth the legal standards for reviewing the R&R and assessing cross-motions for summary judgment.

---

[3] Plaintiff also filed a reply to Defendant's response to his objections. [See Doc. 69].

## II.    Legal Standards

### A.    Review of a R&R

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." See 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b)(3).  Portions of the R&R to which no objections have been made are reviewed for clear error.  See Thomas v. Arn, 474 U.S. 140, 154 (1985); see also Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006); Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006).  However, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  See 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b)(3).  A party objecting to a R&R "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  See Schultz, 565 F.3d at 1361 (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)).  In addressing objections, it is within the district court's discretion whether or not to consider an argument that was not presented to the Magistrate Judge. See Williams v. McNeil, 557 F.3d 1287, 1290–92 (11th Cir. 2009).

### B.    Motions for Summary Judgment

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law." See FED. R. CIV. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When ruling on the motion, the Court must view all evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. See id. at 324–26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251–52. "The mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Id. at 252. There must be evidence on which the jury could reasonably find for the non-moving party. See id. "'If the evidence is merely colorable,' or if it 'is not significantly probative,' then summary judgment is

appropriate." Edmondson v. Velvet Lifestyles, LLC, 43 F.4th 1153, 1159 (11th Cir. 2022) (quoting Anderson, 477 U.S. at 249–50).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." GEBAM, Inc. v. Inv. Realty Series I, LLC, 15 F. Supp. 3d 1311, 1315–16 (N.D. Ga. 2013) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)); accord United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." (internal quotation omitted)).  The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  See United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013).  Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts.  See id. at 1341; accord Oakley, 744 F.2d at 1555–56.

## III.    Discussion

As an initial matter, "[t]o establish a prima facie case of discrimination under the [Rehabilitation] Act, Plaintiff must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." Owens v. Governor's Off. of Student Achievement, 52 F.4th 1327, 1334 (11th Cir. 2022) (alteration in original) (quoting Sutton v. Lader, 185 F.3d 1203, 1207–08 (11th Cir. 1999)).    "Unlawful discrimination under the Rehabilitation Act includes failing to provide reasonable accommodations for employees' known disabilities." Id.    "Thus, an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination" for purposes of the Rehabilitation Act "so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original).[4]

In assessing the objections that both Parties have raised to the R&R, the Court begins with the objections that have been raised in the context of the first element of Plaintiff's Rehabilitation Act claim:  whether Plaintiff is disabled.  The Court will then address the Parties' objections concerning whether Plaintiff was otherwise

---

[4] Although the Eleventh Circuit was addressing an ADA claim instead of a Rehabilitation Act claim in Holly, "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases" and "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." Cash v. Smith, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000).

11

qualified for his position as a tenured professor and whether he was subjected to unlawful discrimination as a result of Defendant's refusal to accommodate him through a remote working arrangement.

## A.    Whether Plaintiff is Disabled

In its objections, Defendant argues that it was error for the Magistrate Judge to conclude as a matter of law that Plaintiff is disabled. [Doc. 66 at 5]. "A disability for purposes of the [Rehabilitation] Act is a physical or mental impairment that substantially limits one of more major life activities."[5] <u>Boyle v. City of Pell City</u>, 866 F.3d 1280, 1288 (11th Cir. 2017). In Defendant's view, Plaintiff's allergy issues do not qualify as a disability for purposes of the Rehabilitation Act because they

---

[5] "'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

occur only episodically in certain regions of the country.[6]  [Id. at 6–8].  Defendant

argues that no reasonable jury could conclude that Plaintiff's allergy issues

substantially limit a major life activity, and at the very least, the question of whether

Plaintiff is disabled should be submitted to the jury.  [Id. at 5].

Defendant cites three (3) cases in support of its theory that a plaintiff is not

disabled when the claimed disability is "episodic," but the Court agrees with the

Magistrate Judge that none of those cases are persuasive.  See R&R at 14 n.3.  In

---

[6] Separately, Defendant argues that it was error for the Magistrate Judge to find that Defendant was required to provide Plaintiff with an accommodation if it merely "regarded" him as disabled. [Doc. 66 at 4–5].  In the portion of the R&R Defendant is referencing, the Magistrate Judge was relying on statutory language defining the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual," "(B) a record of such an impairment," or "(C) being regarded as having such an impairment."  42 U.S.C. § 12102(1); see R&R at 11–12, 26–27.  The Magistrate Judge also referenced the Eleventh Circuit's decision in D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220 (11th Cir. 2005), stating that "an individual falling within the 'regarded as' category of disability under the ADA is entitled to a reasonable accommodation no less than an individual satisfying the actual-impairment definition of disability."  Id. at 1239; R&R at 12.  In its objections, Defendant points to statutory and regulatory language that appears to have been enacted after the Eleventh Circuit's decision in D'Angelo, which clarifies that employers are not required to provide a reasonable accommodation to employees who meet the definition of disabled solely under the "regarded as" prong.  [See Doc. 66 at 4–5]; 42 U.S.C. § 12201(h) ("A covered entity under subchapter I, a public entity under subchapter II, and any person who owns, leases (or leases to), or operates a place of public accommodation under subchapter III, need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section."); 29 C.F.R. § 1630.9(e) ("A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the 'actual disability' prong (§ 1630.2(g)(1)(i)), or 'record of' prong (§ 1630.2(g)(1)(ii)), but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong (§ 1630.2(g)(1)(iii))."). Plaintiff did not respond to this component of Defendant's objections, [see generally Doc. 68], and Defendant's interpretation appears to be correct.  However, the Magistrate Judge's error in setting forth the legal standard for establishing that Plaintiff has a disability pursuant to the Rehabilitation Act has no bearing on the Magistrate Judge's independent determination that Plaintiff is actually disabled as a matter of law, or the undersigned's instant analysis.

one of the cases Defendant cites, Svoboda v. TimkenSteel Corp., No. 5:18-cv-01443, 2020 WL 1513710 (N.D. Ohio Mar. 30, 2020), the plaintiff allegedly suffered from asthma, but the court emphasized that "***the testimony from all examining physicians was that the condition does not substantially limit any major life activities***." Id. at *7 (emphasis in original).  Here, in contrast, there is medical evidence that Plaintiff was diagnosed with "Allergic Fungal Sinusitis," [Doc. 40-11], and Plaintiff's physician, Dr. Andrew Pugliese, stated that as a result of his condition, Plaintiff "experiences recurrent sinus infections, laryngitis, difficulty breathing, speaking, thinking, and concentrating," [Doc. 40-12].  Plaintiff also stated that while he was living in Georgia he would experience flare ups four (4) to six (6) times a year and lose his ability to speak for seven (7) to ten (10) days at a time.  R&R at 27.  And as the Magistrate Judge noted, speaking is a major life activity for purposes of the Rehabilitation Act.  Id. at 12 (citing 29 C.F.R. § 1630.2(i)(1)(i)).

In another case Defendant cites, Thomas v. Comcast Cable Communications Management, LLC, Civil Action No. 1:19-cv-01953, 2020 WL 13850733 (N.D. Ga. Nov. 24, 2020), the plaintiff claimed to suffer from "unspecified asthma," but the court opined that there was not "any medical evidence in the record . . . that Plaintiff was substantially limited in his ability to breathe."  Id. at *11.  In addition, the plaintiff in Thomas "repeatedly reported that his symptoms would totally subside within fifteen to thirty minutes if he went outside to get some fresh air."  Id. at *12.

14

That is a stark contrast from Plaintiff's condition, which lasted seven (7) to ten (10) days at a time whenever he experienced a flare up and led him to relocate to a different part of the country pursuant to his physician's medical advice.  In the third case Defendant cites, Whitesell v. FMS Financial Management Services, LLC., No. 3:18-CV-00496, 2020 WL 2770017 (M.D. Tenn. May 28, 2020), as the Magistrate Judge explained, "[t]he only medical evidence the plaintiff presented was a doctor's note saying her 'impairment substantially limits one or more major life activities' without identifying any major life activity and without explaining how the 'impairment "substantially limits" an activity.'"  R&R at 14 n.3 (quoting Whitesell, 2020 WL 2770017, at *5).

Furthermore, the fact that Plaintiff's flare ups occur episodically does not prevent his condition from being a disability because Plaintiff is still significantly impaired by the condition "when afflicted."  Arline v. Sch. Bd. of Nassau Cnty., 772 F.2d 759, 764 (11th Cir. 1985); see also 29 C.F.R. § 1630.2(j)(1)(vii) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.").  And as the Magistrate Judge observed, "the fact that Plaintiff has mostly been able to mitigate the effects of his condition by moving to California does not prevent his condition from being a disability."  R&R at 28.

For all these reasons, the Court finds no error with the Magistrate Judge's conclusion that Plaintiff is disabled as a matter of law.

**B.    Whether Plaintiff Is a Qualified Individual Who Can Perform the Essential Functions of the Job**

To satisfy the second element of his Rehabilitation Act claim, Plaintiff "must prove that he is a 'qualified individual'—that is, someone with a disability who, 'with or without reasonable accommodation, can perform the essential functions of the employment position[.]'" Holly, 492 F.3d at 1256.  To be a qualified individual, "[P]laintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, . . . that he can perform the essential functions of his job with a reasonable accommodation."  Id. (quoting D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1229 (11th Cir. 2005)).  "If [Plaintiff] is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the [Rehabilitation Act]."  Id. (quoting D'Angelo, 422 F.3d at 1229).

As the Magistrate Judge noted, "[t]he Parties agree that the written job description for Plaintiff's position identifies 'teaching, research, and service' as the three essential functions.  But those generalized categories provide no guidance as to whether the functions need to be performed in person."  R&R at 16 (internal citation omitted); see Plaintiff's Statement of Material Facts ¶ 27 [Doc. 40-1].  The Parties vigorously dispute whether physical presence on campus is essential to

perform those functions, and the Magistrate Judge ultimately found that the issue should go to a jury. See R&R at 30, 35.

In its objections, Defendant argues that the Magistrate Judge should have given more weight to the employer's judgment that physical presence is an essential function of a tenured professor's job. [Doc. 66 at 8–9]. Granted, "the employer's view is entitled to substantial weight" in determining what is an essential function. D'Angelo, 422 F.3d at 1233. But the Magistrate Judge fully acknowledged this. R&R at 16. And as the Magistrate Judge also recognized, "this factor alone may not be 'conclusive[ ].'" Holly, 492 F.3d at 1258 (quoting D'Angelo, 422 F.3d at 1233); see R&R at 16.

What is more, the Eleventh Circuit has explained that "when considering the employer's judgment regarding what is an essential function, we have previously considered not only the company's 'official position,' but also testimony from the plaintiff's supervisor." Holly, 492 F.3d at 1257. And as the Magistrate Judge and Plaintiff both emphasize, Plaintiff's supervisor and GSU's Assistant Director of Benefits were originally prepared to approve Plaintiff's remote working arrangement as an accommodation. See R&R at 17–18 (noting that "the deans and supervisors know Plaintiff's job responsibilities, and they saw no issue with him working remotely"); [Doc. 68 at 10] (arguing that "[a]ll the people at the time who knew the specifics of Dr. Greene's job and of his request knew that, in his particular

17

case, another year of remote teaching would have enabled, not impaired, his ability to perform the essential functions of his job").

Defendant next argues that in assessing the essential functions of Plaintiff's job the Magistrate Judge was overly focused on teaching as opposed to the other components of Plaintiff's job as a tenured professor. [Doc. 66 at 9]. Defendant contends that some of Plaintiff's additional responsibilities as a tenured professor cannot be performed remotely, including "[b]eing present on campus to have discussions with his students before, during, and after class," "[s]pending time with GSU students and potential students, other professors, and members of the local music community in-person," and "the need for Plaintiff to participate in in-person meetings." [Id. at 9–10, 13]. Defendant may have a point that some of Plaintiff's non-teaching responsibilities would be difficult for him to perform remotely, but as the Magistrate Judge noted, the record indicates that Plaintiff expressed a willingness to make short trips to Atlanta to fulfill those additional responsibilities. See R&R at 22, 37.

Defendant disputes the assertion that Plaintiff was willing to come to campus and argues that some of the statements the Magistrate Judge relied on pre-dated Plaintiff's accommodation request from 2021. [Doc. 66 at 12–13]. Defendant specifically points to Plaintiff's April 23, 2021 accommodation request form in which he stated, "[t]he current arrangement prevents me from being in a geographic

18

location (SE, US) where I am often ill and unable to perform my job responsibilities." [Doc. 40-23 at 3]. But several months later Plaintiff clarified, "[a]lthough short trips to the southeast are usually not problematic unless there is a lot of rainfall, longer stays are." [Doc. 40-26 at 1]. Further, as Plaintiff notes, there is no evidence that Plaintiff was ever asked to visit Atlanta and refused. [Doc. 68 at 7–8]. All things considered, the Court finds that at this stage there is a genuine dispute of material fact concerning Plaintiff's ability to perform the non-teaching components of his job.

With respect to the teaching component, Defendant argues that the Magistrate Judge should have placed more emphasis on negative course evaluations Plaintiff received as evidence that he could not successfully perform his teaching responsibilities remotely. [Doc. 66 at 10–12]. The Court agrees with the Magistrate Judge that the course evaluations are a "mixed bag." See R&R at 33 ("[T]he student comments regarding Plaintiff's performance are a mixed bag. When viewed in the light most favorable to Plaintiff, they weigh against Defendant. But when viewed in the light most favorable to Defendant, they weigh against Plaintiff."). But as the Magistrate Judge also noted, Plaintiff received negative comments from students about online classes before the pandemic too, yet he was still permitted to teach remotely. Id. at 20.

In Plaintiff's own objections with respect to this element, he primarily challenges the weight of the evidence Defendant submitted in the form of negative course evaluations and an affidavit from an Interim Dean. [See Doc. 65 at 3–6]. He contends that the negative course evaluations "are at best tangentially relevant" to the issue of his position's essential functions, "lack credibility" because they were written anonymously, and "represent only a minority of the set." [Id. at 4]. He adds that the affidavit from the Interim Dean speaks "only in generalities" about GSU's preference for its faculty members to be present in person and does not directly address whether and to what extent in-person presence is an essential function of the job. [Id. at 4–5]. He argues that contrary to Defendant's assertions, "[t]he vast weight of the evidence shows Defendant railroaded him, with a pre-ordained denial, without any regard to his particular job duties or needs, in a general push to bring the whole faculty back to campus as the COVID pandemic eased." [Id. at 5]. Plaintiff is welcome to raise these arguments at trial. Ultimately, though, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

Although neither side has presented sufficient evidence for the Court to conclude as a matter of law that physical presence is an essential function of Plaintiff's job, the Court finds that both Parties have presented sufficient evidence

20

to create a fact dispute on this point. As such, the Parties' objections with respect to the second element of Plaintiff's Rehabilitation Act claim are overruled.

The Court does, however, find one error with the R&R with respect to this element. In analyzing Plaintiff's motion for summary judgment, the Magistrate Judge simultaneously granted Plaintiff summary judgment on the second element of his Rehabilitation Act claim while also finding that there is a fact dispute about whether in-person presence was an essential function of Plaintiff's job. Compare R&R at 29 ("The undersigned also **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment be **GRANTED** as to the second element of his claim— whether he is a 'qualified individual' within the meaning of the Rehabilitation Act." (emphasis in original)), with id. at 35 ("[A] reasonable jury could conclude that in-person presence was an essential function of Plaintiff's position, and that Plaintiff's request for remote work would not enable him to perform that function."). If in-person presence is an essential function of Plaintiff's job and Plaintiff could not perform that essential function with or without the requested accommodation, then he would not be a qualified individual for purposes of the Rehabilitation Act. See Holly, 492 F.3d at 1256–57 ("We therefore agree with the district court that if *strict punctuality* is indeed an essential function of Holly's position as a mold polisher, then he cannot perform this function 'with or without reasonable accommodation,' he is therefore not a 'qualified individual' under the ADA, and his claims ultimately

21

must fail." (emphasis in original)).  Therefore, contrary to the Magistrate Judge's recommendation, the Court denies Plaintiff's request for summary judgment on the second element of his Rehabilitation Act claim.

**C.    Whether Defendant's Denial of Plaintiff's Requested Accommodation Was Discriminatory**

Finally, both Parties object in different ways to the Magistrate Judge's conclusions regarding whether Defendant's denial of the requested accommodation was discriminatory.  Defendant argues that the Magistrate Judge should have found as a matter of law that the proposed accommodation was unreasonable.  [Doc. 66 at 14].  By comparison, Plaintiff argues that the Magistrate Judge should have found that Defendant's undue hardship defense fails as a matter of law.  [Doc. 65 at 1].

Beginning with Defendant's objection, Defendant argues that the question of whether physical presence is an essential function of Plaintiff's job for purposes of the second element discussed above also informs the question of "the reasonableness of any proposed accommodation" for purposes of the third element.  [Doc. 39 at 9–10].  In this regard, Defendant's arguments pertaining to the third element rise and fall with its arguments pertaining to the second element because they depend on the Court accepting Defendant's argument that in-person presence is essential to Plaintiff's job.  [See Doc. 66 at 15] (arguing that "[b]ecause in-person presence is an essential function of a tenured professor and because Greene cannot perform these important aspects while working fully remotely from California, Defendant is

22

entitled to summary judgment because Plaintiff's request to work remotely from California was unreasonable"). Consequently, the same fact issues that preclude the Court from granting summary judgment to Defendant on the second element also preclude the Court from granting summary judgment for Defendant on its overlapping arguments raised in the context of the third element.

As an additional rationale, Defendant argues that Plaintiff's requested accommodation is unreasonable because "for the rest of his career, GSU would always be limited in what classes could be assigned to Plaintiff, always be forced to allow Plaintiff to participate in meetings virtually even though the meeting was otherwise being conducted in-person, always have to plan around whether Plaintiff could be in Atlanta or not, and always find other professors to perform the in-person components of Plaintiff's job." [Id. at 14]. But even if that were true, it would still be up to the jury to decide whether those considerations render Plaintiff's requested accommodation unreasonable. For all these reasons, the Court considers it premature to hold that Plaintiff's requested accommodation is unreasonable as a matter of law.

At the same time, the Court also is not prepared to hold that Defendant's undue hardship defense fails as a matter of law, particularly in light of the Court's determination that there is a fact dispute concerning whether physical presence is an essential function of Plaintiff's job. In response to Plaintiff's request for summary

judgment on this point, Defendant identifies a variety of specific burdens that Plaintiff's requested accommodation could impose, including limiting the courses that Plaintiff could be assigned, reducing his availability for conversations with students, and adversely affecting meeting productivity if Plaintiff participated remotely in faculty and committee meetings. [Doc. 67 at 8]. Though Plaintiff contends that there is insufficient evidence that any of these burdens are "undue" [Doc. 65 at 2], the Court considers the degree and severity of the burdens imposed by the accommodation to be a fact question for the jury to resolve.

## IV.    Conclusion

For the reasons set forth above, the Court **OVERRULES** Plaintiff's objections to the R&R [Doc. 65] and **SUSTAINS IN PART AND OVERRULES IN PART** Defendant's objections to the R&R [Doc. 66].[7] The Court **ADOPTS** the R&R [Doc. 60] as herein modified.

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment. [Doc. 39]. Specifically, the Court **GRANTS** Defendant's motion as to Count I (Title I of the ADA), Count II (Title II of the ADA), and Count IV (breach of contract) and thus **DISMISSES WITHOUT**

---

[7] Defendant's objections are sustained only with respect to the component of the R&R in which the Magistrate Judge found that Defendant was required to accommodate Plaintiff insofar as he was merely "regarded" as disabled. In all other respects, Defendant's objections are overruled.

**PREJUDICE** those counts.[8]  The Court **DENIES** Defendant's motion for summary judgment on Count III (Rehabilitation Act).

The Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment [Doc. 40] to the extent he seeks summary judgment as to the first element of Count III (Rehabilitation Act) and as to Defendant's Stewart defense.  The Court **DENIES** Plaintiff's motion in all other respects.

By way of closing, the Court notes that at the time they filed their Joint Preliminary Report and Discovery Plan the Parties indicated that there was a possibility of settlement after discovery, [Doc. 7 at 12], and the Magistrate Judge who was initially assigned to this matter observed that "mediation could be successful here, given the parties' indication that there is a possibility of settlement," [Doc. 11 at 1].  The Court agrees that mediation could be successful and would potentially be beneficial in this case, particularly now that the Parties have proceeded past discovery and summary judgment.

Accordingly, the Court **REFERS** this case to Chief Magistrate Judge Russell G. Vineyard for assignment to the next available Magistrate Judge for the purpose of conducting mediation.  The Court **STAYS** this case pending mediation.  The

---

[8] The dismissal of Plaintiff's ADA and breach of contract claims is without prejudice because it is based on Eleventh Amendment sovereign immunity, which is jurisdictional in nature. See Dupree v. Owens, 92 F.4th 999, 1008 (11th Cir. 2024) ("Because the dismissals were based on sovereign immunity grounds, the jurisdictional nature of the dismissal requires it to be entered without prejudice.").

25

Court **DIRECTS** the Parties to notify the Court of the outcome of mediation within

seven (7) days of its conclusion.

      **SO ORDERED**, this 18th day of July, 2024.


*Eleanor L. Ross*
_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia